In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2874

HARRY ALEMAN,

*Petitioner-Appellant*,

*v.*

JERRY L. STERNES, Warden,
Dixon Correctional Center,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 1025—**Suzanne B. Conlon**, *Judge*.

ARGUED JANUARY 29, 2003—DECIDED FEBRUARY 19, 2003

Before COFFEY, EASTERBROOK, and KANNE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Charged with murder, Harry Aleman bribed Judge Frank Wilson (of the Circuit Court of Cook County) to secure an acquittal. Wilson committed suicide in 1990 on learning that news of this and other corruption had reached federal investigators. Already in prison on unrelated federal convictions, see *United States v. DiDomenico*, 78 F.3d 294 (7th Cir. 1996); *Aleman v. United States*, 878 F.2d 1009 (7th Cir. 1989); *United States v. Aleman*, 609 F.2d 298 (7th Cir. 1979), Aleman was tried again for the murder, after we held that his trial before Judge Wilson had been a sham that

did not place him in jeopardy of conviction, so that a new trial would not be a second jeopardy. *Aleman v. Circuit Court of Cook County*, 138 F.3d 302 (7th Cir. 1998). This time he was convicted. His sentence is 100 to 300 years' imprisonment. After the state judiciary rejected his constitutional objections, *People v. Aleman*, 313 Ill. App. 3d 51, 729 N.E.2d 20 (1st Dist. 2000), he sought collateral relief under 28 U.S.C. §2254 and lost again. *Aleman v. Sternes*, 205 F. Supp. 2d 906 (N.D. Ill. 2002). The district judge issued a certificate of appealability limited to a single issue: whether the prosecutor's reference to Aleman's failure to take the stand violated his right to due process of law.

During closing argument, the prosecutor twice alluded to the fact that Aleman had not testified. According to the prosecutor, Aleman was "the only one in this room who didn't come on this witness stand and talk about accepting responsibility" as others involved in the shooting had done. Aleman's lawyer objected, and the judge sustained the objection. Later, when discussing evidence that three shots had been heard (though only two bullets struck Billy Logan, the victim), the prosecutor asked the jury to infer that Aleman had fired three times: "either he shot at the dog or he shot at Bobby Lowe, or even perhaps . . . [he shot] again at Billy Logan and missed. We don't know. Harry Aleman knows. We don't know." Aleman's lawyer did not object to this statement. The court instructed the jury that Aleman was not required to testify and that his decision not to do so "must not be considered by you in any way in arriving at your verdict." This instruction shows the gap between what happened in Aleman's trial and what happened in *Griffin v. California*, 380 U.S. 609 (1965), where the jury was told that it could draw an adverse inference from the accused's failure to testify. What *Griffin* condemns is equating silence with evidence of guilt, which undermines

the privilege against compulsory self-incrimination. Reminding jurors of something they already know—that the defendant did not testify—could be a back-door invitation to draw the forbidden inference, but when it is not there is no constitutional problem. See *United States v. Robinson*, 485 U.S. 25 (1988) (recognizing a distinction between an adverse inference and a simple reference to silence); *Portuondo v. Agard*, 529 U.S. 61, 69 (2000) ("*Griffin* prohibited comments that suggest a defendant's silence is 'evidence of *guilt*'" (emphasis in original)). Cf. *Greer v. Miller*, 483 U.S. 756 (1987) (instruction to jury not to draw any inference from silence means that prosecutor's quest for such an inference has been thwarted, and no constitutional error has occurred).

Without citing *Griffin*, *Robinson*, *Miller*, or *Portuondo*, or discussing the significance of defense counsel's decision not to object to the prosecutor's second statement, the state's appellate court condemned the prosecutor's argument as misconduct. 313 Ill. App. 3d at 66-69, 729 N.E.2d at 34-35, relying on *People v. Blue*, 189 Ill. 2d 99, 724 N.E.2d 920 (2000). The appellate court may have thought that the remarks violated the Constitution of the United States as well as norms of state law, though it did not say. It went on to conclude that any error was harmless because the presiding judge repeatedly instructed the jury that a defendant need not testify and that no inference could be drawn from Aleman's exercise of his privilege to remain silent. See also *Lakeside v. Oregon*, 435 U.S. 333 (1978).

What Aleman now argues is that, because the state appellate court did not explicitly hold that the prosecutor's comments were harmless beyond a reasonable doubt—the right standard for evaluating on direct appeal claims of constitutional errors, see *Chapman v. California*, 386 U.S. 18 (1967)—the state judiciary has rendered "a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. §2254(d)(1). Illinois contends that any error by the state court in applying the *Chapman* standard is irrelevant, because the harmless-error question on collateral review is whether a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). See also *O'Neal v. McAninch*, 513 U.S. 432 (1995). Aleman replies that §2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act, jettisons *Brecht* and replaces it with the question whether the state judiciary unreasonably applied the *Chapman* standard. If yes, Aleman contends, he is entitled to collateral relief; the state does not get a second try under the more lenient approach of *Brecht*. Aleman's argument has some support in *Whitmore v. Kemna*, 213 F.3d 431, 433 (8th Cir. 2000) (dictum), but has been rejected by every appellate decision that has tackled the subject head-on. See *Herrera v. LeMaster*, 301 F.3d 1192, 1199-1200 (10th Cir. 2002) (en banc); *Bulls v. Jones*, 274 F.3d 329, 335 (6th Cir. 2001); *Sanna v. DiPaolo*, 265 F.3d 1, 14-15 (1st Cir. 2001). We reserved the question in *Harding v. Walls*, 300 F.3d 824, 828 n.2 (7th Cir. 2002), but the time to choose has arrived: we agree with these decisions.

Aleman's premise is that if a state court renders a decision contrary to, or unreasonably applying, federal law, then the prisoner is *entitled* to a writ of habeas corpus. This is not, however, what §2254(d) says. It begins: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted* with respect to any claim that was adjudicated on the merits in State court proceedings *unless*" certain things are true. (The emphasis in this quotation is ours.) Unless the adjudication "resulted in a decision that was contrary to, or involved an unreason-

able application of, clearly established Federal law", collateral relief "shall not be granted". If the state court's opinion *was* unreasonable—or if the state judiciary did not address the constitutional claim, despite an opportunity to do so—then §2254(d) no longer applies. A prisoner still must establish an entitlement to the relief he seeks, and it is §2254(a), not §2254(d), that sets the standard: the court issues "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Whether a given prisoner's custody violates the Constitution, laws, or treaties of the United States depends, first, on whether all substantive rules have been respected (the merit of the claim) and, second, on whether any error *caused* the custody. That is where *Brecht*'s harmless-error doctrine enters; a harmless error did not play a causal role and thus does not justify collateral relief. Nothing in the AEDPA suggests that it is appropriate to issue writs of habeas corpus even though any error of federal law that may have occurred did not affect the outcome.

Twice since the AEDPA's enactment the Supreme Court has used the *Brecht* standard on collateral review. See *Early v. Packer*, 123 S. Ct. 362, 366 (2002); *Penry v. Johnson*, 532 U.S. 782, 795 (2001). It did not explain why, in its view, *Brecht* survives the amendment to §2254(d). Maybe the question was not briefed, or perhaps the Justices thought the answer obvious. For the reason we have just given, the answer *is* obvious, so we are not inclined to dismiss the language of *Early* and *Penry* as incautious dicta. Other courts of appeals have disagreed about the sequence of decision. *Herrera* held that before turning to *Brecht* the federal judiciary must determine that the state judiciary applied *Chapman* unreasonably. *Bulls*, on the other hand, concluded that it makes sense to start with *Brecht*—for if the error had a substantial and injurious effect then any conclusion that the error was harm-

less beyond a reasonable doubt must have been unreasonable, while if the error did not have a substantial and injurious effect then the *Chapman* inquiry can be bypassed. *Early* approached the sequence the same way *Herrera* did (though without holding that this is compelled), and we suspect that most of the time this choice depends on prudence rather than obligation. Unless its jurisdiction is at stake, a court may take up issues in whatever sequence seems best, given the nature of the parties' arguments and the interest in avoiding unnecessary constitutional decisions. Compare *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), with *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999).

Here the sequence of analysis matters not at all. The state's court of appeals did not mention *Chapman* because it apparently did not think that the federal Constitution had been violated. It applied a state-law standard of harmlessness to what it saw as an error of state law by the prosecutor. Given the trial judge's anti-inference instruction, this is an appropriate perspective. Even if the instruction were deemed inadequate, and even if the prosecutor's argument were treated as an implied request to use Aleman's silence as substantive evidence against him, that fleeting argument was so peripheral to this trial that no substantial and injurious result came to pass. We are confident that the jury convicted Aleman based on the evidence actually introduced, not on speculations about the significance of missing testimony. Thus Aleman's custody does not violate the federal Constitution, see §2254(a), and he is not entitled to collateral relief.

Aleman presents arguments about issues in addition to the one identified in the certificate of appealability. Like the district judge, we conclude that none of these is substantial, so we decline his request to expand the certificate.

AFFIRMED

No. 02-2874                                                            7

A true Copy:

    Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*