**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

OSA INTHAVONG,
　　　　　　*Petitioner-Appellant,*

v.

ANTHONY LAMARQUE, Warden; BILL
LOCKYER, Attorney General,
　　　　　　*Respondents-Appellees.*

No. 03-57075

D.C. No.
CV-01-01669-
JTM/LSP

OPINION

---

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted
January 14, 2005—Pasadena, California

Filed August 23, 2005

Before: Diarmuid F. O'Scannlain and Richard R. Clifton,
Circuit Judges, and Charles R. Weiner,* District Judge.

Opinion by Judge O'Scannlain

---

*The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

11258

## COUNSEL

Janice M. Deaton, San Diego, California, argued the cause for the petitioner-appellant and was on the briefs.

Elizabeth A. Hartwig, Office of the Attorney General of California, San Diego, California, argued the cause for the respondents-appellees; Bill Lockyer, Attorney General, Robert R. Anderson, Gary W. Schons, Gary W. Brozio, and Eliza-

beth A. Hartwig, Office of the Attorney General of California, San Diego, California, were on the brief for the respondents.

## OPINION

O'SCANNLAIN, Circuit Judge:

In this appeal from the denial of a petition for writ of habeas corpus, we must decide whether the admission of an allegedly coerced confession in the state court trial was prejudicial error.

I

On the evening of September 12, 1998, a white Honda Civic slowly passed some partygoers standing outside a San Diego area home. One partygoer kicked the car. Several hours later, the same Honda returned in the company of several other cars. A group of twenty to thirty Asian males exited these cars and started to beat an individual named Dobson, apparently at random. One of the group, named "Clumsy", fired a gun at Dobson several times.

Dobson was pronounced dead on arrival at a local hospital. He had two gunshot wounds in the chest, a skull fracture, puncture wounds (probably from a screwdriver), and had been beaten (probably with a metal pipe or a baseball bat).

Later that night, at 1:15 AM, police spotted a white Honda Civic, whose plates matched witness descriptions, parked with another car that also matched witness descriptions. The white Honda Civic eluded pursuit.

The police then went to the address at which the white Honda Civic was registered and found the car. While the police were impounding it, Osa Inthavong came out of the

house to talk with them. Inthavong stated that he drove the car last and that he had returned home with it at about 1:30 AM.

Three days later, Inthavong spoke with the police. In an allegedly coerced confession, he admitted that he had been driving the white Honda Civic when it was kicked and that he had brought back a group of fellow gang members to retaliate. He recounted swinging at Dobson and missing, then dropping Dobson with a kick to his neck. He stated that many in his group then rushed in on Dobson and started to beat him. He identified Clumsy as the shooter but disavowed having any intent to kill Dobson or knowledge that Clumsy would shoot him.

A few weeks later, on November 5, the police arrested Inthavong for Dobson's murder. While left alone in the patrol car with a friend who had also been arrested for the murder, he was secretly recorded as saying, "I keep asking homey why he shoot. He was almost dead when we were . . . done with him."

Later that day, Inthavong spoke to the police again, this time while in custody. He explained that some white males had kicked his white Honda Civic while he was driving a friend home. He had then gone to Clumsy's house and got several carloads of people to return with him to teach a lesson. He stated that a fight had broken out and shots had been fired, but that he had not participated. Inthavong was charged with aiding and abetting a second-degree murder.

At Inthavong's trial, a gang member named Phonelama Phomthavong ("Phon") testified against him. Phon had also been charged as an aider and abettor of Dobson's murder but in return for his testimony was allowed to plead guilty to a lesser crime. Phon testified that he was a member of Inthavong's gang and that he was with the group that Inthavong had gathered to retaliate against the people who had kicked Inthavong's car. Phon further testified that

Inthavong had attacked Dobson and others joined in. Phon testified that Clumsy had shot Dobson with a gun taken from Phon's car, that no one knew Clumsy intended to use a gun, and that no one had intended for anyone to die. Phon admitted that he had earlier given a different version of events to the police and the District Attorney.

The prosecution also called a gang expert, who testified that Inthavong, Phon, Clumsy, and the others were members of a street gang whose ethic demanded avenging insults like the kicking of the white Honda Civic. Inthavong's September 16 confession, his November 5 confession, and his secretly-recorded statement to his friend were all admitted into evidence.

In Inthavong's defense, a friend, Tiffani M., testified that Inthavong was twenty feet from the fight when shots broke out. Inthavong also testified. He said that he had driven past the party and that someone there might have attacked his car. When he told his friends about it, they suggested returning to find out what happened to his car and he agreed. When they arrived, a friend ran at Dobson and attacked him. Inthavong admitted that he himself then kicked Dobson, but denied knowing that Phon had a gun in his car, denied intending to kill Dobson, and denied knowing who did the shooting. The jury found Inthavong guilty.

Inthavong appealed his conviction. He argued that his September 16 confession was coerced and that his November 5 confession was tainted by the coerced September 16 confession. The California Court of Appeal held that Inthavong waived any challenge to the November 5 confession, that his September 16 confession was voluntary under a totality of the circumstances test, and that, in any case, any error in admitting the September 16 confession was harmless given the

weight of evidence and Inthavong's almost identical testimony at trial.[1]

Inthavong again challenged the admission of his September 16 and November 5 confessions in this petition for a federal writ of habeas corpus. The district court ultimately denied the petition and denied Inthavong's request for a certificate of appealability under 28 U.S.C. § 2253(c). After timely appeal, a motions panel of this court granted Inthavong a certificate of appealability on his challenge to the admission of the September 16 confession.

## II

We are unable to rule on the substance of Inthavong's claim that the admission of his November 5 confession was prejudicial error. Inthavong has neither requested nor received a certificate of appealability on this issue at any time. In any case, the California Court of Appeal has held that Inthavong failed to challenge the admission of the November 5 confession at trial and that his claims with respect to it were therefore procedurally barred under California law. Federal habeas claims must be dismissed where state courts have decided the claim on state procedural grounds. *See Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002).

## III

Whatever the merits of Inthavong's claim that his September 16 confession was coerced, we would be unable to provide relief unless the admission of that confession into evidence harmed Inthavong. *See Arizona v. Fulminante*, 499

---

[1]Inthavong then filed a petition for writ of habeas corpus with the California Supreme Court. Because the California Supreme Court summarily denied Inthavong's habeas petition, the California Court of Appeal's decision is the relevant state court determination. *See Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003).

U.S. 279, 306-12 (1991) (applying to the admission of coerced confessions the rule of *Chapman v. California*, 386 U.S. 18, 24 (1967), that constitutional errors that are harmless beyond a reasonable doubt do not justify reversing a conviction).

A

**[1]** The California Court of Appeal held that admitting the confession did not harm Inthavong. Since *Mitchell v. Esparza*, 540 U.S. 12 (2003), it has been clear that under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we must defer to such holding unless it was in "conflict with the reasoning or the holdings of [Supreme Court] precedent" or if it "applied harmless-error review in an 'objectively unreasonable' manner." *Id.* at 17, 18; *see also Medina v. Hornung*, 386 F.3d 872, 878-79 (9th Cir. 2004).

**[2]** If we determine under AEDPA that the state court's harmless error holding is contrary to Supreme Court precedent or objectively unreasonable, then no deference is owed. We revert to the independent harmless error analysis that we would apply had there been no state court holding. *Cf. Caliendo v. Warden of California Men's Colony*, 365 F.3d 691, 695 (9th Cir. 2004) ("We agree that the state court's analysis was framed erroneously and grant the habeas petition based on our independent review of the record."); *Fernandez v. Roe*, 286 F.3d 1073, 1077 (9th Cir. 2002) ("Because the California state courts applied an incorrect legal standard, contrary to federal law as pronounced in *Batson*, we review petitioner's *Batson* claims *de novo*."). Such independent harmless error analysis is described in *Brecht v. Abrahamson*, 507 U.S. 619 (1993): errors are harmless if they do not have a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637 (internal quotation marks and citation omitted). Admittedly the Second Circuit has done away with the *Brecht* standard in light of AEDPA and *Esparza*,[2]

---

[2] *See Zappulla v. New York*, 391 F.3d 462, 467, 474-75 (2d Cir. 2004) (holding that *Esparza* has supplanted *Brecht*, at least where a state court

and the Eighth Circuit has at least questioned *Brecht*'s continued vitality.[3] We, however, have squarely held that the *Brecht* standard survived AEDPA. *See Bains v. Cambra*, 204 F.3d 964, 976-77 (9th Cir. 2000) (recognizing and joining a consensus among the circuits that "federal district courts always should apply the *Brecht* standard when conducting their own independent harmless error review, regardless of what, if any, type of harmless error review was conducted by the state courts"). We appear to have reached the same conclusion even post-*Esparza*. *See Picazo v. Alameida*, 366 F.3d 971, 971 (9th Cir. 2004) (order) (rejecting a petition for rehearing that argued that the *Brecht* standard was inapplicable post-*Esparza* because "[g]iven that *Esparza* did not even mention *Brecht*, or its progeny, we do not believe that the Court intended to overrule those earlier decisions") (internal citation omitted). To grant relief where a state court has determined that a constitutional error was harmless, we must both determine (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht* from the constitutional error.

[3] In following this two-part harmless error test, we are joined by the Tenth, the Seventh, and the Fourth Circuits. The Tenth Circuit has instructed that "if the district court concludes the [state] court's application of *Chapman* was objectively unreasonable, the court should engage in an independent harmless error analysis applying the standard articulated in *Brecht*." *Saiz v. Burnett*, 296 F.3d 1008, 1012-13 (10th Cir. 2002) (internal citation omitted); *see also Cargle*

---

has made a harmless error ruling); *Gutierrez v. McGinnis*, 389 F.3d 300, 306-07 (2d Cir. 2004) (same).

[3]*See Whitmore v. Kemna*, 213 F.3d 431, 433 (8th Cir. 2000) ("We are not convinced that the AEDPA did not abrogate the requirement that federal habeas courts conduct a harmless error analysis under *Brecht* in situations such as the one before us, where the state court already has conducted a *Chapman* harmless error analysis . . . .").

*v. Mullin*, 317 F.3d 1196, 1220, 1224 (10th Cir. 2003) ("If the state courts did not address a harmless-error issue (*or did so under the wrong standard*), we apply the standard generally adopted for habeas purposes in *Brecht v. Abrahamson.*" (internal citation omitted) (emphasis added)).

In *Aleman v. Sternes*, the Seventh Circuit has also rejected the argument that AEDPA "jettisons *Brecht* and replaces it with the question whether the state judiciary unreasonably applied the *Chapman* standard." 320 F.3d 687, 690 (7th Cir. 2003). Instead, the court concluded that even if a state court's harmless error ruling were objectively unreasonable, it would still then conduct a *Brecht* review. *Id.* The court reasoned: "Nothing in the AEDPA suggests that it is appropriate to issue writs of habeas corpus even though any error of federal law that may have occurred did not affect the outcome." *Id.* We agree.

Sitting en banc, the Fourth Circuit has recently adopted the same two-part approach to state court harmless error rulings. *See Allen v. Lee*, 366 F.3d 319 (4th Cir. 2004) (per curiam). The Fourth Circuit had to evaluate the North Carolina Supreme Court's conclusion that an erroneous jury instruction was harmless beyond a reasonable doubt. In a terse per curiam decision, the Fourth Circuit explained first that "the North Carolina Supreme Court's conclusion . . . resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court" and second that "the error was not harmless under *Brecht.*" *Id*. at 322 (internal citation omitted).[4]

---

[4]In addition to the per curiam opinion, seven of the twelve judges joined opinions that clearly adopted this mode of proceeding. Judge Gregory, writing for a plurality of five judges, *see id.* at 321, first concluded that the habeas writ could not issue unless the state court's harmless error ruling was objectively unreasonable. *Id.* at 340-41 (Gregory, J., concurring in the judgment on the harmlessness issue). Having concluded that the state court's ruling was objectively unreasonable, he then proceeded to

**[4]** In espousing the approach of these three circuits, we reject the view—adopted by the Sixth Circuit and at least suggested by the Third—that the AEDPA/*Esparza* test is wholly subsumed by the *Brecht* test. *See Bulls v. Jones*, 274 F.3d 329, 335 (6th Cir. 2001) (reasoning that "if a habeas petitioner satisfies the *Brecht* standard, 'he will surely have demonstrated that the state court's finding that the error was harmless beyond a reasonable doubt . . . resulted from an unreasonable application of *Chapman*' " (citations omitted)); *see also Lam v. Kelchner*, 304 F.3d 256, 270 n.14 (3d Cir. 2002) (opining that the *Brecht* standard is "more generous" to the state courts than the AEDPA standard). We agree that the AEDPA and the *Brecht* inquiries will overlap in many cases: the state court will be objectively unreasonable under AEDPA and the error harmful under *Brecht*, or vice versa, for similar or even identical reasons. We do not agree that such inquiries will overlap in all cases.

Harmless error determinations are highly fact-specific. They often involve a review of the entire trial record. Under *Brecht*, we will often make numerous independent evaluations about the weight and sufficiency of the various items of evidence, the inferences to be drawn, and the different theories of the case. Under AEDPA, we simply concern ourselves with the reasonableness of the evaluations and conclusions that the state court explicitly or implicitly made, although requiring the state court to meet the more stringent 'beyond a reasonable doubt' standard. The cumulative differences between

---

evaluate independently whether the error was harmless under *Brecht*. *Id.* at 343-44. Judge Traxler took the same approach. *See id.* at 336 (Traxler, J., concurring in part and concurring in the judgment, joined by Shedd, J.) (stating that a "determination that the state court's adjudication was the product of an unreasonable application of *Chapman* only results in our conducting an independent review of the harmlessness of the [error] . . . . [W]e are to review the claim not under the *Chapman* harmless-error standard, but under the harmless-error standard of review set forth by the Supreme Court in *Brecht*.").

these different types of evaluations will sometimes lead to different results. *Compare Bulls*, 274 F.3d at 335 (holding that the *Brecht* standard is always more deferential than the AEDPA standard) *with Bryson v. Ward*, 187 F.3d 1193, 1205 n.10 (10th Cir. 1999) ("The *Brecht* standard in this setting is more rigorous than the determination under the AEDPA of whether the Oklahoma Court of Criminal Appeals unreasonably applied the otherwise more rigorous standard in *Chapman.*") (internal citation omitted). We therefore cannot join the Sixth Circuit, nor likely the Third Circuit, on this point.

B

Since both the *Brecht* and the AEDPA/*Esparza* tests must be satisfied with respect to harmless error before relief can be granted, we are not obliged to address them in any particular order. *See Aleman v. Sternes*, 320 F.3d 687, 691 (7th Cir. 2003) (explaining that "[u]nless its jurisdiction is at stake, a court may take up issues in whatever sequence seems best"). We first address the objective reasonableness under AEDPA of the California court's harmless error ruling.

Under AEDPA we must defer to the state court's harmless error ruling unless it is "contrary to, or involve[s] an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The state court's harmless error holding is "contrary" to precedent if it "fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). It is an "unreasonable application" of precedent if it is "objectively unreasonable," which is more than being merely, or even clearly, incorrect. *See id.*; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

**[5]** Applying this approach here, we are satisfied the California court's harmless error ruling was not contrary to

Supreme Court precedent. The California court correctly stated that under *Arizona v. Fulminante*, 499 U.S. 279, 306-12 (1991), it would have to find that the admission of Inthavong's September 16 confession was "harmless beyond a reasonable doubt."

**[6]** The California court's application of the *Fulminante* standard was not objectively unreasonable. Inthavong claims that his September 16 confession was prejudicial because in it he confessed to being at the scene of the murder and to physically attacking the victim. Yet, as the California court concluded, the remaining evidence was "overwhelming." Numerous witnesses identified Inthavong's white Honda Civic as the lead car in the gang members' entrance on the scene. Inthavong himself told the police who towed his car that he was the last to drive the white Honda Civic and that he had it until 1:30 AM on the night of the killing. A witness friendly to Inthavong, Tiffani M., described accompanying Inthavong back to the scene along with other gang members. Phon, a co-conspirator, also testified that Inthavong was at the scene and participated in the fighting. Although Phon's credibility could be questioned in isolation, his account corroborated the other evidence and was corroborated by it. Finally, an expert in Asian gangs testified to their vengeance ethic that would have required Inthavong to retaliate once his car was kicked.

**[7]** In addition to all this, in Inthavong's other statements he confessed to being at the scene of the murder and physically attacking the victim. In his November 5 confession, Inthavong admitted that he was at the scene but denied participating in the attack on Dobson. In his trial testimony, Inthavong admitted that he had returned with friends to the scene and had kicked Dobson. Finally, the police recorded Inthavong saying, "I keep asking homey why he shoot. He was almost dead when we were . . . done with him." These confessions weigh heavily against Inthavong. As we have held, "the defendant's own confession is probably the most

probative and damaging evidence that can be admitted against him. . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury . . . ." *Taylor v. Maddox*, 366 F.3d 992, 1017 (9th Cir. 2004) (alterations in original). Even without the September 16 confession, it would not be unfair to say that Inthavong was convicted out of his own mouth.

**[8]** Even without the September 16 confession, Inthavong's own statements and an abundance of evidence attest to his participation in Dobson's murder. The California Court of Appeal was objectively reasonable to rule that any error in admitting Inthavong's September 16 confession was harmless beyond a reasonable doubt.

## IV

**[9]** Because the California court's harmless error holding was objectively reasonable, we cannot grant Inthavong the relief he seeks. The judgment of the district court is hereby

**AFFIRMED**.