**Maximino NAVARRO, aka Maximino Raymond Navarro, Petitioner,**

v.

**Derral G. ADAMS, Warden, Respondent.**

**No. CV 04–8080–R(RC).**

United States District Court, C.D. California.

March 1, 2006.

Maximino Navarro, aka Maximino Raymond Navarro, Corcoran, CA, Pro se.

Peggie Bradford Tarwater, Suzann E. Papagoda, Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

REAL, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Manuel L. Real, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On November 21, 2000, in Los Angeles County Superior Court case no. TA039802, a jury found petitioner Maximino Navarro, aka Maximino Raymond Navarro, guilty of first degree murder with the special circumstance of a "drive-by" shooting in violation of California Penal Code ("P.C.") §§ 187(a) and 190.2(a)(21), and the jury also found that, in committing the murder, petitioner personally used a firearm (handgun) within the meaning of P.C. § 12022.5(a), petitioner discharged a firearm (handgun) at an occupied motor vehicle which caused death to another within the meaning of P.C. § 12022.5(b), petitioner personally discharged a firearm (handgun) causing the death of a person other than an accomplice within the meaning of P.C. § 12022.53(c)-(d), and the murder was done for the benefit of a street gang within the meaning of P.C. § 186.22(b)(1). Clerk's Transcript ("CT")

198A–204.[1] Petitioner was sentenced to the term of life without the possibility of parole plus 28 years to life in state prison. CT 224–27.

Petitioner appealed his conviction to the California Court of Appeal, CT 228, which affirmed the judgment in an unpublished opinion filed March 17, 2003, but struck the P.C. § 12022.53 enhancement and remanded the matter to impose an enhancement under P.C. § 12022.5(b)(1). Lodgment nos. 14–15. Petitioner then filed a petition for review in the California Supreme Court, which denied review on June 25, 2003. Motion to Dismiss, Exhs. C–D.

## II

The California Court of Appeal, in affirming petitioner's conviction, found the following facts and circumstances underlying it:[2] Two eyewitnesses testified petitioner, driving a burgundy colored Honda Accord, pulled up alongside Rodney Davis's truck and fired shots at Davis. Two other witnesses testified they saw petitioner driving his burgundy Honda in the vicinity of the shooting immediately before it occurred. Another witness testified he saw a burgundy Honda pull up to Davis's truck and heard three shots fired. This latter witness, Sebron Irby, was threatened by petitioner while they were both incarcerated in the county jail. Petitioner told Irby "I fucked off your home boy" which Irby understood as a reference to Davis. Petitioner's former girlfriend testified he drove a burgundy Honda. Finally, there was evidence petitioner and Davis belonged to rival gangs which were feuding at the time of the shooting.

## III

On September 28, 2004, petitioner, proceeding pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction and sentence. On October 27, 2004, respondent filed a motion to dismiss, arguing the petition is a "mixed" petition, and on December 21, 2004, this Court found the petition to be a "mixed" petition and granted respondent's motion to dismiss with leave to amend. Petitioner moved to strike the unexhausted claims, Grounds Three and Four, and on January 25, 2005, this Court granted that request. On May 13, 2005, respondent filed an answer to the amended petition. Petitioner has not filed a traverse.

Petitioner raises the following claims for federal habeas relief in the amended petition:

Ground One—"Petitioner's right to counsel [was] violated under the Sixth Amendment" when a Deputy Sheriff entered his jail cell at the prosecutor's request and seized materials that were subject to the attorney-client privilege (Petition at 5); and

Ground Two—"Petitioner was deprived of his Fourteenth Amendment right to fundamental fairness by the admission of evidence ... that [petitioner] was a security risk and of ... threats [to prosecution witnesses]." *Id.*

## DISCUSSION

## IV

■ The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amend-

---

**1.** Petitioner's first trial resulted in a hung jury. Lodgment no. 15 at 2.

**2.** Lodgment no. 15 at 2.

ed by the AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under the AEDPA, a federal court shall presume that a determination of factual issues made by a state court is correct, and petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

 In determining whether a state court's decision is either "contrary to" or an "unreasonable application" of AEDPA, this Court must examine the last reasoned decision by the state court. *Kennedy v. Lockyer*, 379 F.3d 1041, 1052 (9th Cir. 2004), *cert. denied*, 544 U.S. 992, 125 S.Ct. 1823, 161 L.Ed.2d 755 (2005); *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). The California Supreme Court denied petitioner's claims on the merits when it denied his petition for review without comment. *Gaston v. Palmer*, 417 F.3d 1030, 1038 (9th Cir.2005); *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, federal courts presume "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the

same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir.2000), *cert. denied*, 534 U.S. 944, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). Thus, in addressing petitioner's claims, this Court will consider the reasoned opinion of the California Court of Appeal denying those claims. *Brodit v. Cambra*, 350 F.3d 985, 987 (9th Cir.2003), *cert. denied*, 542 U.S. 925, 124 S.Ct. 2888, 159 L.Ed.2d 787 (2004).

## V

 The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., amend. VI. This right, which attaches to state court prosecutions through the Fourteenth Amendment, *Gideon v. Wainwright*, 372 U.S. 335, 342–45, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799 (1963), is implicated when the government interferes with the confidential relationship between a criminal defendant and his counsel. *Weatherford v. Bursey*, 429 U.S. 545, 554–58, 97 S.Ct. 837, 843–45, 51 L.Ed.2d 30 (1977); *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986). However, " 'mere government intrusion into the attorney-client relationship, although not condoned by the court, is not itself violative of the Sixth Amendment right to counsel. Rather, the right is only violated when the intrusion substantially prejudices the defendant.' " *United States v. Danielson*, 325 F.3d 1054, 1069 (9th Cir.2003) (quoting *United States v. Irwin*, 612 F.2d 1182, 1186–87 (9th Cir. 1980) (footnote omitted)); *see also Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir.2004) ("When the government deliberately interferes with the confidential relationship between a criminal defen-

dant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant"), *cert. denied,* —— U.S. ——, 126 S.Ct. 419, 163 L.Ed.2d 319 (2005). "Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial." *Williams,* 384 F.3d at 585; *Danielson,* 325 F.3d at 1069.

In Ground One, petitioner contends his Sixth Amendment rights were violated when a deputy sheriff searched petitioner's cell and seized materials protected by the attorney-client privilege. Petition at 5. The California Court of Appeal determined the facts underlying petitioner's claim in Ground One, as follows:

> Prior to the commencement of the second trial [petitioner] moved to dismiss the charges against him on the ground the sheriff's department had seized attorney-client privileged documents from his jail cell. The following evidence was produced at the hearings on the motion. [¶] While [petitioner] was in jail awaiting retrial the prosecutor received information from an informant that [petitioner] was involved in gang activities and had made threats against several persons on the prosecution's witness list. Another prosecution witness told the prosecutor he had been threatened by a man with a gun who told him to "quit going to court and get at your homeys." [¶] Based on this information the prosecutor asked the sheriff's department to "see if there was any . . . information of gang activity and or threats to any witnesses. . . ." [¶] While [petitioner] was in court on a pretrial matter, Deputy Mark Williams, who had only three weeks' experience in jail cell searches, searched [petitioner's] cell.

> Williams seized a number of documents which he believed fit the description of items sought by the prosecutor. These items included a birthday card to [petitioner] signed with names which appeared to be gang monikers, several photographs of people standing by cars, pictures of scantily clad women torn from magazines and an essay entitled "A Word for the Warrior." Williams also seized notes prepared by [petitioner] at the request of his attorney relating to defense strategy, cross-examination of prosecution witnesses and facts [petitioner] believed supported his innocence. (We will refer to these notes as "the privileged documents.") After reading these items, including the privileged documents, Williams placed them in a plastic bag, took them to his supervisor's office and placed them in a drawer. The following day the items were turned over to Deputy Ray Richardson, the investigating officer in this case. Richardson subsequently brought the seized items to the trial judge. **He did not show the items to the prosecutor or anyone else.** The prosecutor represented to the court he had no knowledge of what was seized from [petitioner's] cell other than a general description of the items given by the judge. [¶] [Petitioner] testified he had prepared notes relating to his defense at the request of his counsel and these notes were among the items Williams seized from his cell. He agreed when asked if in his opinion "the information that was contained in those notes, if it is or has been read or looked at by law enforcement, would . . . jeopardize or could in some way jeopardize the defense in this case[.]" [¶] Without objection the court and defense counsel reviewed the seized material in camera. [¶] The trial court determined some of the items seized from [petitioner's] cell

were covered by the attorney-client privilege[,] but denied the motion to dismiss. The court reasoned the only person who had actually seen the privileged documents, Deputy Williams, did not seem to remember too much about what he read. Therefore, the prosecution had not gained an unfair advantage from the seizure of the privileged documents. The court added, however, the defense could renew the motion if it appeared during trial the prosecution was using information which may have come from the privileged documents. [Petitioner] never renewed the motion.

Lodgment no. 15 at 3–4 (emphasis added).

The California Court of Appeal then denied petitioner's claim that the trial court should have dismissed his criminal case once it determined the government had seized documents protected by the attorney-client privilege, finding the governmental intrusion into the attorney-client relationship had not "so disrupted that relationship [that] defense counsel [was] unable to prepare for trial or constitute[d] conduct so outrageous and egregious as to shock the conscience of the court." Lodgment no. 15 at 11 (footnotes omitted). Further, the Court of Appeal found petitioner had suffered no prejudice, noting:

[Petitioner's] claim of actual prejudice is not supported by the record. [Petitioner] never objected during the trial on the ground the prosecution was making use of information contained in the privileged documents seized from his jail cell. Nor did he allege to the trial court he would make such a claim but for the necessity of waiving his Fifth or Sixth Amendment rights in doing so. [Petitioner] objected to the testimony of Becky Arce but on the ground the prosecutor had not turned over his notes on his interview with Ms. Arce in advance of her testimony, not on the ground her

appearance and testimony was the result of information the prosecutor obtained from reading [petitioner's] privileged documents. Furthermore, we have reviewed the privileged documents seized from [petitioner's] cell. We find no basis for believing the contents of these documents affected the manner in which the People conducted the prosecution of this case. [¶] On the record before us, the unlawful seizure of [petitioner's] privileged documents did not prejudice his defense and he is not entitled to per se reversal of his conviction. . . .

*Id.* at 11–12.

■ Petitioner has not shown the cell search and document seizure substantially prejudiced him. To the contrary, the California Court of Appeal's unrebutted factual findings, which this Court must presume are correct, 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir.), *cert. denied*, 537 U.S. 981, 123 S.Ct. 449, 154 L.Ed.2d 343 (2002), establish that the prosecutor had no knowledge of the contents of the privileged documents seized during the search of petitioner's cell, that the petitioner's cell was searched to locate evidence regarding gang activity and threats to witnesses, not to interfere with petitioner's relationship with his defense counsel, and that the information seized was turned over to the trial court without being viewed by any member of the prosecution team. Furthermore, petitioner has not shown, or even alleged, the prosecution used any confidential information pertaining to defense plans or strategy to gain an unfair advantage during petitioner's trial, or that any evidence gained during, or tainted by, the search of petitioner's cell was introduced at petitioner's trial. Therefore, petitioner has not established a Sixth Amendment violation. *See Weatherford*, 429 U.S. at 558, 97 S.Ct. at 845 ("There being no tainted evidence in

this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford, there was no violation of the Sixth Amendment insofar as it is applicable to the States by virtue of the Fourteenth Amendment."); *United States v. Fernandez*, 388 F.3d 1199, 1240 (9th Cir.2004) (rejecting Sixth Amendment claim when there was no showing of purposeful interference with defendants' attorney-client relationship, "that any defense strategy was actually communicated to the government[,]" or "that any of the evidence presented at trial had been tainted by the alleged intrusion"), *modified by*, 425 F.3d 1248 (9th Cir.), *cert. denied*, 544 U.S. 1009, 125 S.Ct. 1964, 161 L.Ed.2d 790 (2005), 544 U.S. 1041, 125 S.Ct. 2278, 161 L.Ed.2d 1073 (2005), and 544 U.S. 1043, 125 S.Ct. 2286, 161 L.Ed.2d 1077 (2005); *Williams*, 384 F.3d at 585 (Petitioner did not show substantial prejudice sufficient to establish a Sixth Amendment violation from jailhouse monitoring of conversations with visitors and interception of a document when he did "not argue, and the record [did] not show, that the prosecution used any confidential information obtained from the monitoring or interception to achieve an unfair advantage at trial.").

Accordingly, the California Supreme Court's denial of Ground One was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court within the meaning of 28 U.S.C. § 2254(d).

## VI

 Under narrow circumstances, the misapplication of state evidentiary rules may violate federal due process safeguards. *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Ortiz v. Stewart*, 149 F.3d 923, 941 (9th Cir.1998), *cert. denied*, 526 U.S. 1123,

119 S.Ct. 1777, 143 L.Ed.2d 806 (1999). However, to warrant federal habeas relief, a state court's evidentiary ruling must have "so fatally infected the proceedings as to render them fundamentally unfair." *Dubria v. Smith*, 224 F.3d 995, 1001 (9th Cir.2000) (en banc), *cert. denied*, 531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963 (2001); *Dillard v. Roe*, 244 F.3d 758, 766 (9th Cir.), *cert. denied*, 534 U.S. 905, 122 S.Ct. 238, 151 L.Ed.2d 172 (2001). In the context of a claim of improperly-admitted evidence, "[a] writ of habeas corpus will be granted . . . only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.' " *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir.2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899, 103 S.Ct. 3383, 3398, 77 L.Ed.2d 1090 (1983)). In other words, "[o]nly if there are no permissible inferences the jury may draw from evidence can its admission violate due process." *Alcala v. Woodford*, 334 F.3d 862, 887 (9th Cir.2003)(emphasis in original); *Houston v. Roe*, 177 F.3d 901, 910 n. 6 (9th Cir. 1999), *cert. denied*, 528 U.S. 1159, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000). "Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.' " *Jammal v. Van de Kamp*, 926·F.2d 918, 920 (9th Cir.1991) (emphasis in original; citation omitted); *Randolph v. People of the State of Cal.*, 380 F.3d 1133, 1147–48 (9th Cir.2004).

In Ground Two, petitioner complains that the admission into evidence of testimony that he was a "security risk and of third party threats" was prejudicial and denied him a fair trial. Petition at 5.

### A. Security Risk:

The California Court of Appeal made the following factual findings underlying this aspect of Ground Two:

Sebron Irby testified [petitioner] had threatened him while they were riding the sheriff's bus from the courthouse back to jail. This threat occurred as Irby was getting on the bus and [petitioner] was seated "inside of one of the detainer cages." [¶] To corroborate Irby's testimony the prosecutor called Deputy David Hebert, who was assigned to the mens central jail at the relevant time, to testify [petitioner] and Irby were on the same bus together on the day Irby claimed [petitioner] threatened him. The prosecutor began by asking Hebert if he knew [petitioner]. Hebert replied, "I was familiar with [petitioner] inasmuch [as] he was in custody at that time ... and he had special security-handling steps that we had to go through." Hebert also explained, "[w]e try and pay attention to any contact that special handling inmates have with others just for security reasons number one." Turning to the subject of the bus ride the prosecutor asked Hebert: "When you were working here [sic], how was [petitioner] transported? You said he was a security issue." [¶] At this point defense counsel raised an objection. At a side bar counsel told the court: "I'm objecting to this whole thing about security issues, security risks.... This is making it seem like the defendant is some bad guy, and I didn't object to it the first time, but [the prosecutor] slipped it in, but now that the district attorney is starting to use the phrase, I'm objecting." [¶] Without directly ruling on the objection the court allowed the prosecutor to elicit testimony from Hebert as to where [petitioner] was normally located on the bus on trips to and from the jail. Hebert testified there are normally "individual cages that will hold two inmates separate, preventing them from having contact with any of the other inmates on the bus." During the times Hebert saw [petitioner] on the bus he was seated "in one of those small cages."

Lodgment no. 15 at 14–15 (footnotes omitted).

In denying this claim, the California Court of Appeal held:

The People do not attempt to defend Hebert's testimony [petitioner] was a "security issue" and needed "special handling." [Petitioner] may be correct in asserting this testimony was not relevant to any issue in the case or to Irby's credibility. Nevertheless we find its admission was not prejudicial. Hebert did not testify *why* [petitioner] was considered a "security issue" and needed "special handling" for "security reasons." The jury may well have concluded all defendants charged with serious crimes such as murder create a "security issue" and require "special handling." They may also have presumed placing such defendants in "detainer cages" on the bus was just standard operating procedure. There was no evidence to the contrary. Furthermore, there was no evidence from which the jury would necessarily conclude special security measures were taken to protect other inmates from [petitioner] rather than to protect [petitioner] from other inmates. Any Los Angeles jury would certainly be aware rival gang members often wind up in jail together and that ... a risk existed a member of [Davis's] gang would seek to retaliate against [petitioner], the person accused of [Davis's] murder. [¶] In summary, the evidence [petitioner] was bussed in a "cage" was relevant as corroborative of Irby's testimony and neither it nor the evidence [petitioner] was viewed as a "security issue" prejudiced the defense.

Lodgment no. 15 at 15–16.

 A federal court sitting in habeas jurisdiction may not grant relief on an

error determined to be harmless by a state court unless the state court "applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell v. Esparza*, 540 U.S. 12, 18, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) (per curiam); *see also Inthavong v. Lamarque*, 420 F.3d 1055, 1058–59 (9th Cir.2005) ("Under AEDPA, "we must defer to [the California Court of Appeal's harmless error] holding unless it was in conflict with the reasoning or the holdings of [Supreme Court] precedent or if it applied harmless-error review in an objectively unreasonable manner." (citations and internal quotation marks omitted)). Furthermore, if the Court "determine[s] under AEDPA that the state court's harmless error holding is contrary to Supreme Court precedent or objectively unreasonable, then no deference is owed [and this Court] revert[s] to the harmless error analysis that [it] would apply had there been no state court holding." *Inthavong*, 420 F.3d at 1059.[3] Thus, "[t]o grant relief where a state court has determined that a constitutional error was harmless, [the Court] must both determine (1) that the state court's decision was 'contrary to' or an 'unreasonable application' of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht* from the constitutional error." *Inthavong*, 420 F.3d at 1059. Moreover, "[s]ince both the *Brecht* and the AEDPA/*Esparza* tests must be satisfied with respect to harmless error before relief can be granted, [this Court is] not obligated to address them in any particular order." *Id.* at 1061.

Here, although the California Court of Appeal did not explicitly state what standard of harmless error it was employing, California courts generally analyze claims of federal constitutional error under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which focuses on the question of whether the error "was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828; *see also Gutierrez v. McGinnis*, 389 F.3d 300, 306 (2d Cir.2004) ("Mitchell signals, and we therefore hold, that when a state court explicitly conducts harmless error review of a constitutional error, a habeas court must evaluate whether the state unreasonably applied *Chapman*.").[4]

■ Since the overall evidence against petitioner was extremely strong, the Court finds that the California Court of Appeal's determination that Deputy Herbert's testimony was harmless error, and did not have a substantial and injurious effect on the jury's verdict, is neither contrary to, nor an unreasonable application of, clearly established federal law. As discussed above: two eyewitnesses identified petitioner as the individual who, while driving a burgundy Honda, pulled up to Davis's truck and shot Davis; a third witness testified he saw a burgundy Honda pull up to Davis's truck and heard three shots fired; and two other witnesses testified they saw

---

3. When there is no state court ruling on harmless error, habeas corpus relief is granted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Inthavong*, 420 F.3d at 1059.

4. Chapman's "harmless beyond a reasonable doubt" standard places more of a burden on the government than the "substantial and injurious effect or influence" standard under *Brecht*. *O'Neal v. McAninch*, 513 U.S. 432, 438–39, 115 S.Ct. 992, 995–96, 130 L.Ed.2d 947 (1995); *see also Gutierrez*, 389 F.3d at 305 ("Chapman is considerably more generous to prejudiced defendants than is Brecht"). Thus, if an error is harmless under Chapman, it follows a fortiori that it is also harmless under Brecht.

petitioner driving his burgundy Honda in the vicinity of the shooting shortly before it occurred. Moreover, petitioner implicitly took credit for the murder when he confronted Irby (while they were both incarcerated), stating, "That's why I fucked off your home boy." Reporter's Transcript ("RT") 369:27–28, 370:6–7. Moreover, Deputy Hebert's testimony that plaintiff was a "security risk" was only a brief part of a lengthy trial, and did not constitute a significant part of the prosecution's case. Under these circumstances, the California Court of Appeal's harmless error determination was objectively reasonable. *Inthavong*, 420 F.3d at 1061–62. *Cf. Correll v. Stewart*, 137 F.3d 1404, 1416–17 (9th Cir.) (even if court erroneously admitted evidence, such evidence did not have substantial and injurious effect or influence jury's verdict when evidence was mentioned only briefly and evidence of defendant's guilt was substantial), *cert. denied*, 525 U.S. 984, 119 S.Ct. 450, 142 L.Ed.2d 404 (1998) and 525 U.S. 996, 119 S.Ct. 465, 142 L.Ed.2d 418 (1998).

### B. Threats to Witnesses:

The California Court of Appeal made the following factual findings underlying this aspect of Ground Two:

> Jeffrey Johnson testified for the prosecution at both trials. Between the first and second trials two men confronted Johnson at a hamburger stand. One of the men pointed a gun at him and said, "Jeff, you need to quit going to court and get at your homeys." The two men then left. As a result of this threat Johnson moved from the neighborhood out of fear for his safety. [¶] Erica Melendez, [petitioner's] former girlfriend, also appeared as a prosecution witness at the second trial. She testified that she had a telephone conversation with [petitioner's] mother prior to

> the trial, who told her if she did not testify for [petitioner] she would kill her.
>
> \* \* \* \* \* \*
>
> Johnson testified he moved his residence out of fear for his safety after he was threatened at gun point.

Lodgment no. 15 at 12–13. The California Court of Appeal then found the evidence was properly admitted to support the witnesses' credibility, and the evidence of threats against the prosecution witnesses was not unduly prejudicial, holding:

> Although Johnson and Melendez did not state they were presently fearful of testifying, the fact they testified in spite of the threats against them also supports their credibility. [¶] Furthermore, the fact the threats were not made by [petitioner] or at his direction does not make their admission unduly prejudicial. The purpose of the evidence is to assist the jury in judging the credibility of the witness, not to show consciousness of guilt on the part of the [petitioner]. Thus it is not necessary to show the threats were made by the [petitioner] personally or even to link them to [petitioner]. [¶] Picking up on this last point [petitioner] argues he was prejudiced nevertheless because the trial court did not give the jury a limiting instruction to use the threat evidence only in determining the credibility of the witnesses and not in determining the guilt of the [petitioner]. But [petitioner] never requested such a limiting instruction and the trial court had no sua sponte duty to give one.... [¶] We conclude, therefore, evidence of threats against the prosecution witness was relevant and not unduly prejudicial.

Lodgment no. 15 at 13 (footnotes omitted).

 Here, Johnson's and Melendez's testimony was admissible under California law, specifically Evidence Code § 780, which permits evidence of the attitude of a witness toward the action in

which he or she testifies since it is relevant to an assessment of the credibility of the witness.[5] Cal. Evid.Code § 780; *see also People v. Dickey,* 35 Cal.4th 884, 913, 28 Cal.Rptr.3d 647, 668, 111 P.3d 921 (2005) ("Generally, evidence that a witness is afraid to testify is admissible as relevant to the witness's credibility." (citations and internal quotation marks omitted)), *pet. for cert. filed,* (Nov. 2, 2005); *People v. Sapp,* 31 Cal.4th 240, 301, 2 Cal.Rptr.3d 554, 607, 73 P.3d 433 (2003), *cert. denied,* 541 U.S. 1011, 124 S.Ct. 2067, 158 L.Ed.2d 622 (2004). Thus, under California law, evidence of third-party threats is admissible if it goes to the credibility of the witness, whether tied to the criminal defendant or not.[6] *Sapp,* 31 Cal.4th at 281, 2 Cal. Rptr.3d at 592, 73 P.3d 433; *People v. Burgener,* 29 Cal.4th 833, 869, 129 Cal. Rptr.2d 747, 780, 62 P.3d 1 (2003), *cert. denied,* 540 U.S. 855, 124 S.Ct. 146, 157 L.Ed.2d 100 (2003). Therefore, the threat evidence "did not violate [petitioner's] right to due process." *Windham v. Merkle,* 163 F.3d 1092, 1104 (9th Cir.1998) (citation omitted). Furthermore, even if erroneously admitted, the threat evidence did not have a substantial and injurious effect or influence on the jury's verdict, given the strong evidence against petitioner. *Bains v. Cambra,* 204 F.3d 964, 977–78 (9th Cir.), *cert. denied,* 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000); *Ortiz–Sandoval v. Gomez,* 81 F.3d 891, 898 (9th Cir.1996).

Based on the foregoing, California Supreme Court's denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d).

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of facts and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

January 25, 2006.

---

5. Evidence Code Section 780 provides:

Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following: [¶] (a) His demeanor while testifying and the manner in which he testifies. [¶] (b) The character of his testimony. [¶] (c) The extent of his capacity to perceive, to recollect, or to communicate any matter about which he testifies. [¶] (d) The extent of his opportunity to perceive any matter about which he testifies. [¶] (e) His character for honesty or veracity or their opposites. [¶] (f) The existence or nonexistence of a bias, interest, or other motive. [¶] (g) A statement previously made by him that is consistent with his testimony at the hearing. [¶] (h) A statement made by him that is inconsistent with any part of his testimony at the hearing. [¶] (i) The existence or nonexistence of any fact testified to by him. [¶] (j) His attitude toward the action in which he testifies or toward the giving of testimony. [¶] (k) His admission of untruthfulness.

Cal. Evid.Code § 780.

6. Here, Johnson and Melendez's testimony clearly indicated petitioner was not the source of the threats. Moreover, Johnson's testimony did not establish any ties between petitioner and the men who threatened Johnson. RT 144:23–147:22. Although Melendez's testimony was that petitioner's mother made the threat, there was no reason for the jury to infer the threat by petitioner's mother was made at petitioner's direction, and petitioner did not object to Melendez's testimony about the threat. RT 575:21–26.