**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50001**

| | |
|---|---|
| JOHN C. DOUGLAS, | ) |
| | ) **Filed: May 2, 2024** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| STATE OF IDAHO, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel Hoagland, District Judge.

Judgment dismissing successive petition for post-conviction relief, <u>affirmed</u>.

Silvey Law Office Ltd; Greg S. Silvey, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

John C. Douglas appeals from the dismissal of his successive petition for post-conviction relief arising from his conviction for two counts of first degree murder and one count of attempted first degree murder. Douglas asserts the district court erred in dismissing his successive petition after concluding there was an insufficient reason the instant claim was not asserted in his original post-conviction petition and that the petition was not brought within a reasonable time. For the following reasons, we affirm the decision of the district court dismissing Douglas's successive petition for post-conviction relief.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Douglas was charged with two counts of first degree murder, Idaho Code §§ 18-4001, -4002, -4003(a), and 18-204, and one count of attempted first degree murder, I.C. §§ 18-4001, -4002, -4003(a), 18-204, and 18-306. His case was consolidated with his co-defendant,

1

Anthony Robins, who was charged with two counts of aiding and abetting first degree murder and one count of attempted first degree murder. Douglas and Robins were incarcerated at the Ada County Jail while awaiting trial. Jail staff believed Douglas was attempting to deliver a note to Robins, which is prohibited. Based on this belief, jail staff searched Douglas's and Robins' cells to look for the note. In each cell, jail staff found handwritten notes about each defendant's case and gave the notes to the Ada County Prosecutor. Robins' attorney filed a motion seeking relief for the violation of the attorney-client privilege related to the seizure of his notes. Douglas's trial attorneys did not pursue any relief for the seizure of Douglas's notes or join in Robins' motion. On September 23, 2015, a hearing on Robins' motion was held, which Douglas and his attorneys attended. The district court determined Robins' notes were protected by the attorney-client privilege; held the notes were inadmissible at trial; and ordered the State to turn over all copies it had of the notes. As a remedy for the violation, the district court issued an order that Robins' defense could object to anything it believed came from the notes, at which point the State would be required to demonstrate an independent basis for the knowledge. A copy of that order was served on Douglas's attorneys on October 23, 2015. No objections were made by any of the attorneys at Robins' and Douglas's joint trial, and both Douglas and Robins were found guilty of all charges.

In 2016, Douglas filed a direct appeal alleging the district court erred by denying his *Batson v. Kentucky*, 476 U.S. 79 (1986) challenge and by denying his motion for mistrial, and ineffective assistance of counsel because his free time in jail was not sufficient for him to consult his attorneys. This Court found the district court did not err in denying the *Batson* challenge or the motion for a mistrial and that Douglas was not deprived of assistance of counsel. His conviction was affirmed in an unpublished decision. *State v. Douglas*, Docket No. 44538 (Ct. App. January 9, 2018).

In 2018, Douglas filed a pro se petition for post-conviction relief, alleging only one claim: a claim of innocence. He was appointed counsel and given an opportunity to amend the petition. Through counsel, Douglas filed an amended petition and incorporated the claim of innocence in his initial petition and also alleged three claims of trial error and three claims of ineffective assistance of counsel. However, Douglas did not raise any claim, ineffective assistance of counsel or otherwise, relating to the violation of his attorney-client privilege arising from the seizure of his notes. The amended petition was dismissed. Douglas appealed but later voluntarily dismissed the appeal.

2

Meanwhile, Robins also appealed but he appealed the district court's ruling regarding the remedy order for the violation of his attorney-client privilege when jail staff seized his notes. On August 2, 2018, the Idaho Supreme Court issued an opinion, and on November 30, 2018, the Court issued a substitute opinion. *State v. Robins*, 164 Idaho 425, 431 P.3d 260 (2018). The Supreme Court vacated Robins' convictions on the ground that the district court erroneously shifted the burden of alleging prejudice to Robins when the burden should have been placed on the State to rebut the presumption of prejudice arising from the seizure of the notes. *Id.* at 427, 431 P.3d 262. The remittitur in Robins' appeal was issued December 26, 2018.[1]

Douglas subsequently filed a successive petition for post-conviction relief alleging a single claim of ineffective assistance of counsel based on his trial counsel's failure to join in Robins' motion or otherwise pursue relief for the violation of his attorney-client privilege arising from jail staffs' seizure of his notes. Eventually, the hearing was bifurcated to first address the timeliness of the petition and then a separate evidentiary hearing was scheduled to address the merits of the petition. Following the first hearing, the district court dismissed Douglas's successive petition for post-conviction relief, holding Douglas's successive petition was untimely and the arguments raised should have been raised in the original petition for post-conviction relief. Douglas appealed.

## II.

## STANDARD OF REVIEW

If an initial post-conviction action was timely filed, an inmate may file a subsequent petition outside of the one-year limitation period if the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended petition. I.C. § 19-4908; *Charboneau v. State*, 144 Idaho 900, 904, 174 P.3d 870, 874 (2007). Analysis of sufficient reason permitting the filing of a successive petition includes an analysis of whether the claims being made were asserted within a reasonable period of time. *Charboneau*, 144 Idaho at 905, 174 P.3d at 875. In determining what a reasonable time is for filing a successive petition, we will consider it on a case-by-case basis. *Id.* Therefore, the

---

[1] The substance of the opinions did not materially change between the August 2018 Opinion and the November 2018 Opinion. The only difference between the two opinions is the burden of proof the State must establish to demonstrate that its evidence and arguments were derived from an origin independent of Robins' notes. Douglas does not argue the change in the burden of proof affected his claim. Thus, the burden of proof allocation is irrelevant to any substantive claim Douglas makes.

question is whether the petitioner filed the successive petition within a reasonable period of time after discovering the basis for the claims alleged in the successive petition.

## III.

## ANALYSIS

Douglas asserts the district court erred in dismissing his successive post-conviction petition on the alternate bases of untimeliness and failure to demonstrate a sufficient claim. He contends he was unable to pursue his ineffective assistance of counsel claim until the Idaho Supreme Court issued the *Robins* decision because he could not otherwise establish prejudice. Once *Robins* became final, he argues he had a reasonable time thereafter to file his successive petition. He further contends his petition was timely because, although it was filed ten months after the first *Robins* opinion was issued, it was filed only six months after the substitute opinion and, therefore, was filed within a reasonable time of a final decision. The State argues the claims were known in September 2015 at the time Robins filed the original motion seeking a remedy and when Douglas and his attorneys attended a hearing regarding the violation of the attorney-client privilege. The State pointed out the *Robins* decision did not change the law related to attorney-client privilege, it just changed the remedy. The State also argues Douglas waived his right to pursue relief when he failed to join Robins' motion and when he failed to appeal the dismissal of the initial post-conviction petition.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231.

4

Idaho Code § 19-4908 provides: "Any ground finally adjudicated or not so raised . . . may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application." Douglas argues he could not have raised a claim of ineffective assistance of counsel regarding the violation of the attorney-client privilege in his first petition because he could not have established prejudice. According to Douglas, while he may have known the facts underlying his claim, he could not realistically argue prejudice--that he was entitled to a *Kastigar*[2] hearing--until the Idaho Supreme Court issued the *Robins* opinion. Douglas argued in the district court that he was aware of the facts giving rise to the claim and then stated, "But the issue really is that Mr. Douglas was not aware of the appropriate remedy or how the courts would treat it prior to the handing down the *Robins* decision." Post-conviction counsel further argued, "This isn't something that comes along every day and he could not have known how an Idaho district court judge would rule on this type of claim given the lack of case law on point statewide. That was not known until late 2018."

The problem for Douglas is this argument is directly contradicted by the record. Douglas knew or should have known exactly how a district court would rule on the issue because counsel received notice of how the court *actually* ruled when the district court sent a copy of Robins' remedy order for the violation of his attorney-client privilege to Douglas's counsel on October 23, 2015. Thus, at the time Douglas filed his first post-conviction petition, he knew the facts underlying the claim and that relief had been granted on Robins' motion. Douglas concedes he did not raise the claim in his first petition but compares his case to that of *Johnson v. State*, 162 Idaho 213, 395 P.3d 1246 (2017), as a basis to allow an untimely successive petition; *Johnson* is distinguishable.

Johnson's successive post-conviction petition was an active collateral proceeding at the time *Miller v. Alabama*, 567 U.S. 460 (2012), was decided. In *Miller*, the United States Supreme Court held that a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances in light of the principles

---

[2] *Kastigar v. United States*, 406 U.S. 441 (1972). The remedy for a violation of the attorney-client privilege is a hearing in the district court to determine whether the State can establish an origin for its evidence and trial strategy independent from any information obtained as a result of the attorney-client privilege violation. For ease of reference, this opinion will designate that hearing as a *Kastigar* hearing.

5

and purposes of juvenile sentencing. *Miller*, 567 U.S. at 479-80. In *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the United States Supreme Court held that *Miller* announced a new substantive rule of constitutional law and reiterated the definition of a substantive constitutional rule as including "rules forbidding criminal punishment of certain primary conduct," as well as "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Montgomery*, 577 U.S. at 198 (quoting *Penry*, 492 U.S. at 330 (overruled on other grounds)). The Court further held that in light of *Teague v. Lane*, 489 U.S. 288 (1989), "when a new substantive rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule." *Montgomery*, 577 U.S. at 200. Thus, "[w]here state collateral review proceedings permit prisoners to challenge the lawfulness of their confinement, States cannot refuse to give retroactive effect to a substantive constitutional right that determines the outcome of that challenge." *Id*. at 205-06.

In *Johnson*, the Court noted that Johnson was a minor when she was charged with murder; she was later sentenced to two determinate terms of life. *Johnson*, 162 Idaho at 215-16, 395 P.3d 1248-49. In Johnson's successive petition for post-conviction relief, she claimed, among other things, that in light of *Montgomery* and *Miller*, her two life sentences violated the Eighth Amendment. *Id*. The Idaho Supreme Court held that although Johnson could have brought a claim in her direct appeal arguing her sentence was cruel, unusual, or excessive, "she could not have argued that her sentence was *illegal* under *Miller*'s interpretation of the Eighth Amendment until after *Miller* was decided." *Johnson*, 162 Idaho at 224, 395 P.3d 1257. The Court went on to hold, "While it's true Johnson could have made *an* Eighth Amendment claim that her sentence was generally excessive or cruel or unusual, she could not have made the claim that her sentence was *illegal* under *Miller*'s holding interpreting the Eighth Amendment until after *Miller* was decided." *Johnson*, 162 Idaho at 224, 395 P.3d 1257.

Unlike in *Miller* and *Montgomery*, the *Robins* decision did not announce a new substantive rule of constitutional law or give rise to a new claim for Douglas. Instead, *Robins* analyzed existing caselaw to identify a remedy for a violation of the attorney-client privilege based on *Kastigar*. The *Robins*' Court specifically noted:

> If anything, this case is a logical extension from the *Stuart* [*v. State*, 118 Idaho 932, 801 P.2d 1283 (1990)] case history. Here, the district court found that the contents of Robins's notes were privileged and that the State obtained access to those notes. Under one interpretation of the *Stuart* decisions, this constituted a

> prima facie showing of prejudice, at which point the State should have been required to establish that Robins's constitutional right to counsel had not been violated.

*Robins*, 164 Idaho at 431, 431 P.3d at 266. The Court went on to note that after reviewing existing caselaw, "the sound reasoning undergirding these decisions can be used here to determine whether Robins made a prima facie showing such that the burden should have been shifted to the State to demonstrate that the seizure of the confidential information did not prejudice Robins." *Id.* at 433, 431 P.3d at 268.

Because *Robins* did not announce a new rule of substantive constitutional law, Douglas's claim did not depend on the *Robins* opinion. The authority relied on by the *Robins* Court existed for decades before Douglas filed his initial post-conviction petition, and as a result, Douglas could have raised the claim in the initial petition and cited to those cases as authority--just as Robins did on direct appeal. On that basis, this case is more like the cases following *Estrada v. State*, 143 Idaho 558, 149 P.3d 833 (2006). In *Estrada*, the Idaho Supreme Court concluded that based on *existing case law*, Estrada's trial attorney rendered deficient performance for failing to warn Estrada that he had a Fifth Amendment privilege as applied to questions during a psychosexual evaluation. *Id*. at 564, 149 P.3d at 839. Thereafter, in *Vavold v. State*, 148 Idaho 44, 218 P.3d 388 (2009), the Court held that *Estrada* did not announce a new rule of law:

> As the district court observed, we stated in *Estrada* that our earlier "*decisions clearly indicate* that both at the point of sentencing and earlier, for purposes of a psychological evaluation, a defendant's Fifth Amendment privilege against self-incrimination applies." 143 Idaho at 563, 149 P.3d at 838 (emphasis added). It is our view, therefore, that *Estrada* did not announce a new rule of law entitled to retroactive effect.

*Vavold*, 148 Idaho at 46, 218 P.3d at 390.

Like *Estrada*, the *Robins* opinion did not announce a new rule of law--it made clear it was analyzing established law to adopt the *Kastigar* remedy for violations of the attorney-client privilege. For that reason, this case is distinguishable from *Johnson*. While Johnson could not have raised a claim that her sentence was illegal until *Miller* was issued, Douglas could raise a claim of ineffective assistance of counsel regarding his attorneys' failure to address the violation of the attorney-client privilege.

Although Douglas repeatedly asserts that it was clearly ineffective assistance of counsel to fail to join Robins' motion or seek a remedy for the alleged attorney-client violation, despite such a seemingly glaring error, he simultaneously argues we should excuse Douglas for failing to raise

7

such a meritorious claim in his initial petition because to have raised it would have been frivolous. We acknowledge the difference between the standards for raising a substantive claim on direct appeal and raising a claim of ineffective assistance of counsel in post-conviction. However, Douglas could have raised precisely the same arguments in his initial petition that Robins successfully raised on direct appeal but did not. If, as Douglas alleges, the deficient performance is so patently clear, then at the time Douglas filed his initial petition, he had both the facts and existing legal authority to support his claim of ineffective assistance of counsel.

Douglas argues he could not have raised the claim in his first petition because he could not establish prejudice. This is so, Douglas argues, because his attorney did not object to any of the relevant evidence at trial. This argument is unpersuasive, in part because we disagree that Douglas's claim would have been frivolous prior to the *Robins* decision based on the lack of his trial counsel's objections at trial. Robins' trial counsel did not raise any of the relevant objections during the trial, and yet, Robins prevailed on direct appeal regarding the district court's remedy for the violation of the attorney-client privilege.

Douglas acknowledges that generally, if the claim of ineffective assistance of counsel revolves around trial counsel's failure to file a motion, the petitioner must show there is a reasonable likelihood the motion would be successful. He disputes that such is the standard for a claim that the deficient performance deprived the petitioner of a *Kastigar* hearing. Douglas argues under that circumstance, the prejudice is that petitioner was deprived of a hearing in which the State has the burden of proof, not the petitioner. But if that is true, then Douglas could have easily asserted prejudice in the first petition--that he was deprived of the *Kastigar* hearing altogether-- and at the hearing, it would have been the State's burden to rebut the presumption its evidence was derived from the violation of the attorney-client privilege. Thus, the success of the claim did not turn on whether Douglas objected at trial because it was the deprivation of the remedy before trial that constitutes the prejudice. The district court did not err when it dismissed the successive petition for post-conviction relief because the claim could have been raised in the first petition.

The district court also found the successive petition was not filed in a reasonable time frame. A reasonable time begins "from the date of notice" that new claims potentially exist. *Charboneau*, 144 Idaho at 905, 174 P.3d at 875 (explaining timeliness is measured "from the date of notice, not from the date a petitioner assembles a complete cache of evidence"). Douglas was aware of his claim in 2015. For Douglas to wait more than three years and eight months after the

incident to pursue his claim is unreasonable. Even if the time frame began when the first *Robins* opinion was issued in August 2018, counsel's explanation of a heavy caseload and a desire to obtain full knowledge of all the case files are insufficient reasons for the delay of ten months where the claim was known more than three years prior. Post-conviction counsel testified that he knew it was a single claim and that he did not need to wait for the final opinion in *Robins* or the remittitur to draft the successive petition. Nonetheless, counsel still waited six months after the substitute opinion in *Robins* to file the seven-page successive petition, which consisted of only a single claim. The district court did not err when it determined Douglas's successive petition was untimely.

## IV.

## CONCLUSION

The district court did not err when it dismissed Douglas's successive post-conviction petition on the grounds that the claim could have been raised in Douglas's first post-conviction petition and it was not filed in a reasonable time. Accordingly, we affirm the district court's order dismissing Douglas's successive petition for post-conviction relief.

Chief Judge GRATTON and Judge Pro Tem MELANSON, CONCUR.